IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| W.W. Norton & Company, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Follett Higher Education Group, LLC, George Kyroudis, and Ryan Peterson,<br><br>Defendants. | Civ. Action No. _____<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff W.W. Norton & Company, Inc. ("Norton"), for its Complaint against Defendants Follett Higher Education Group, LLC, George Kyroudis, and Ryan Peterson (collectively, "Follett"), respectfully alleges as follows:

### INTRODUCTION

1. Plaintiff Norton, by its attorneys, brings this action against Defendants for breach of contract, unjust enrichment and conversion.

2. Follett acts as a distributor of Norton's digital content to users at colleges, universities and other institutions, and it is also a retailer of Norton's printed content. Under the parties' agreement for digital sales, Follett is required to collect payments for Norton's digital content on Norton's behalf, and to remit all funds so collected within 60 days after the end of the month in which a purchase is made, less certain deductions including Follett's commission. For printed content, Follett must make payment within 90 days of invoicing by Norton.

3. Despite multiple demands for payment, Follett has failed to remit timely payment on both digital and print sales and currently is many months delinquent on its obligations. At the time of filing, Follett owed Norton at least $8,337,126. Based on invoices for printed content and Follett's own transaction reporting with respect to digital content, the additional amounts due as of

1

April 30, 2024, will be $913,671. Accordingly, if Follett continues to withhold monies it is contractually required to pay to Norton, the total past due amount as of May 1 will be $9,250,797.

4. Since Follett is contractually required to timely remit the funds it collects on Norton's behalf, it cannot use funds collected for Norton – and that should have been remitted to Norton – for other purposes. By using funds collected on Norton's behalf for other purposes, including, upon information and belief, remitting payments to other publishers, Follett has converted Norton's funds.

5. Upon information and belief, Follett's president, Ryan Peterson, and its Treasurer, George Kyroudis, were aware of and directed the conversion of Norton's funds .

## JURISDICTION AND VENUE

6. This is a civil action seeking damages for breach of contract, unjust enrichment and conversion under New York State law.

7. This Court has subject matter jurisdiction over Plaintiff's claims, pursuant to 28 U.S. Code § 1332, as all parties are diverse and the amount in controversy exceeds $75,000.00. Further, the parties have consented to jurisdiction and venue in this Court, by written agreement.

8. Additionally, this Court has personal jurisdiction over Defendants because Follett regularly transacts business within the State of New York, including the sale of Norton's content to customers in New York, and the harm from any tortious act by Follett was felt by Norton in New York.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b).

## PARTIES

10. Plaintiff Norton is a New York corporation with a principal place of business at 500 Fifth Avenue, New York, New York 10110.

11. Defendant Follett Higher Education Group, LLC is an Illinois Limited Liability

Company, authorized to do business in the state of New York, with its headquarters located at 3 Westbrook Corporate Center, Suite 200, Westchester, IL 60154.

12. Defendant Ryan Peterson is President of Follett and resides in Illinois.

13. Defendant George Kyroudis is Vice President of Tax, Treasury, and Insurance for Follett and resides in Illinois.

## FACTUAL ALLEGATIONS

14. Norton is the oldest and largest book publishing house owned by its employees. Since 1923, Norton has consistently published books that reflect their social moments and resonate well beyond them. Norton's college department, started seven years after the firm's founding, has served as a cornerstone of the publishing program. From its early roots in music and literature, Norton's college list has expanded across the humanities, social sciences, and sciences with the introduction of market-leading textbooks, including for example the storied Norton anthologies of literature. On the trade book side, Norton has published everything from classics of literature, history, biography, and poetry to commercial best-sellers.

**Printed Content**

15. Follett acts as a retailer of Norton's printed content such as textbooks ("Printed Content") to customers at institutions throughout the United States. Those customers include faculty, students and other end users, as well as, in some cases, the institutions themselves. For these print sales, Follett purchases the Printed Content and then sells these items to students and faculty at the institutions through, *inter alia,* brick-and-mortar bookstores that Follett owns and operates on school campuses.

16. The parties' longstanding contractual arrangement for Printed Content is memorialized in numerous writings, including invoices and correspondence, and through their course of dealing (collectively, the "Print Agreement").

17. Pursuant to the Print Agreement, Follett is obligated to remit payment to Norton on sales of Printed Content within 90 days after the date of any invoice.

18. Norton has performed all of its obligations pursuant to the Print Agreement.

19. The total amount past due on sales of Norton's Printed Content as of the date of filing is $2,024,427 (the "Print Amount Due"). Despite multiple demands, Follett has failed to make good on the Print Amount Due. Based on invoices for printed content, the additional amounts due as of April 30, 2024, for printed content will be $597,020.

**Digital Content**

20. On July 29, 2022, Norton and Follett entered into a written agreement (the "Digital Agreement") for distribution of digital content produced by Norton, including but not limited to eBooks and access codes allowing access to Norton's digital courseware (the "Digital Content"). Follett sells the Digital Content to customers through several sales "Channels," including (i) Follett point of sale in store, (ii) Follett ecommerce, (iii) an institutional customer's learning management system, and (iv) Follett ACCESS. The Follett ACCESS program, as defined in the Digital Agreement, is "Follett's inclusive access program where Follett enables institutions to deliver Digital Content as part of tuition, credit or course charges."

21. Under the Digital Agreement, Follett is obligated to remit to Norton net sales (as defined in the contract) on Digital Content within 60 days following the end of the month in which any such sale occurred.

22. Norton has performed all of its obligations under the Digital Agreement.

23. The total amount past due on sales of Norton's Digital Content as of the date of filing is $6,312,700 (the "Digital Amount Due"). Despite multiple demands, Follett has failed to make good on the Digital Amount Due. Based on Follett's own transaction reporting with respect

to digital content, the additional amounts due for such content as of April 30, 2024, will be $316,650.

24. Upon information and belief, Follett does not segregate payments from customers made on Norton's Digital Content, and does not segregate payments made with respect to Norton's content generally and payments made on content that Follett distributes for other publishers. By failing to timely remit to Norton payments collected on Norton's behalf, Follett has intentionally and without authority assumed or exercised control over those funds and put them to other uses, including, upon information and belief, remitting payments to other publishers, interfering with Norton's right of possession to the funds. In connection with its intentional retention of Norton's property, upon information and belief, Follett has made numerous fraudulent statements regarding, *inter alia*, the status of its collections of payments from its customers, and the status of amounts due and owing to other publishers as compared with Norton.

25. Upon information and belief, key executives at Follett including Defendants Ryan Peterson and George Kyroudis directed or participated in the acts of conversion of Norton's funds.

**FIRST CAUSE OF ACTION**
**BREACH OF PRINT AGREEMENT (FOLLETT)**

26. Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 – 25 above.

27. Plaintiff has performed all of its duties and fulfilled all of its obligations under the Print Agreement.

28. Pursuant to the Print Agreement, Follett was obligated to remit payments from customers on Norton's Print Content no later than 90 days after the date of any invoice for that content.

29. Notwithstanding repeated demands by Norton, Follett has not remitted the full amount past due on sales of Print Content, totaling $2,024,427 as of the date of filing.

## SECOND CAUSE OF ACTION
## BREACH OF DIGITAL AGREEMENT (FOLLETT)

30. Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 – 29 above.

31. Plaintiff has performed all of its duties and fulfilled all of its obligations under the Digital Agreement.

32. Pursuant to the Digital Agreement, Follett was obligated to remit payments from customers on Norton's Digital Content no later than 60 days after the end of each month in which any sale of Digital Content was made.

33. Notwithstanding repeated demands by Norton, Follett has not remitted the full past due on sales of Digital Content, totaling $6,312,700 as of the date of filing.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT (FOLLETT)

34. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 33 of the complaint as if set forth at length herein.

35. If this Court holds that the parties did not enter a legally binding contract, whether for Print Content, Digital Content, or both, Defendant must compensate Plaintiff to the extent that it has been unjustly enriched, at Norton's expense, in an amount to be determined at trial.

36. In equity and good conscience, Defendant should not be able to retain or enjoy the benefit of the sales of Norton's Digital and Print Content in light of Defendant's failure to remit payment for same.

## FOURTH CAUSE OF ACTION
## CONVERSION (ALL DEFENDANTS)

37. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 36 of the complaint as if set forth at length herein.

38. Follett has a duty to hold payments made by customers for Norton's Digital Content

in trust or bailment until those sums are paid over to Norton no later than 60 days after sales are made.

39. Follett, through the acts of its key executives, instead has intentionally and without authority assumed and exercised control over funds belonging to Norton, thereby interfering with Norton's right of possession to its property.

40. Such conversion was intentionally and wrongfully committed by Defendants to deprive Norton of its property and for Defendants' direct benefit and advantage, and was accompanied, upon information and belief, by fraudulent statements designed to disguise the conversion of Norton's property.

WHEREFORE, Plaintiff demands judgment and relief against Defendants as follows:

a. For a finding that Follett has breached the Print Agreement;

b. For a finding that Follett has breached the Digital Agreement;

c. In the alternative, for a finding that Follett has been unjustly enriched;

d. For a finding that Defendants have unlawfully converted Plaintiff's property to their own use;

e. Awarding Plaintiff contract damages on the Print Agreement of at least $2,024,427;

f. Awarding Plaintiff contract damages on the Digital Agreement of at least $6,312,700;

g. Awarding Plaintiff damages on its conversion and unjust enrichment claims in amounts to be determined at trial;

h. Awarding Plaintiff punitive damages on its conversion claim;

i. Awarding Plaintiff's costs and expenses;

j. Awarding Plaintiff prejudgment interest at the highest rate allowed under law; and

    k.       For such further legal and equitable relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable in accordance with Federal Rule of Civil Procedure 38(b).

DATED: April 16, 2024

                                               Respectfully submitted,

                                               */s/* Lacy H. Koonce, III
                                               Klaris Law PLLC
                                               Lacy H. ("Lance") Koonce, III
                                               161 Water Street
                                               New York, NY 10014
                                               (917) 612-5861
                                               lance.koonce@klarislaw.com

                                               *Attorneys for Plaintiff*